■ D.A. ELIA CONSTRUCTION CORPORATION, Appellant, v NEW YORK STATE THRUWAY AUTHORITY, Respondent. (Claim No. 87413.) [734 NYS2d 295] —Rose, J. Appeal from a judgment of the Court of Claims (McNamara, J.), entered July 17, 2000, upon a decision of the court in favor of the New York State Thruway Authority.

This action arises out of a contract between claimant and the State Thruway Authority (hereinafter the State) for the repair of four concrete piers supporting the Castleton-on-Hudson Bridge. Claimant was paid the unit prices specified in the contract for the number of cubic yards of concrete actually placed and the number of gallons of epoxy bonding compound estimated in the project's bid documents. As a result of having to repair more but smaller areas of the piers than were identified in the bid documents and the State's alteration of the repair procedure, claimant brought this action seeking compensation for additional work and costs, including the cost

of additional gallons of bonding compound. Finding, after trial, that claimant had agreed to the changed repair procedure, that the increased number of repaired areas did not reflect a qualitative change in the work and that the extra bonding compound had not been "incorporated into the work," the Court of Claims dismissed the claim. Claimant appeals.

Absent proof of fraudulent misrepresentation or qualitative alteration of the work, the express terms of a unit price contract govern the parties' rights and obligations (*see, Depot Constr. Corp. v State of New York*, 19 NY2d 109, 113; *Triple Cities Constr. Co. v State of New York*, 194 AD2d 1037, 1038-1039). Seeking to avoid this result, claimant contends that the State misrepresented the extent of the repairs and that the Court of Claims erred in finding no qualitative change in the contemplated work.

To rely on fraudulent misrepresentation, claimant had to prove that the additional work performed resulted directly from the State's concealment or nondisclosure of material facts either known to it or within its possession (*see, Mount Vernon Contr. Corp. v State of New York*, 56 AD2d 952, 953-954, *lvs dismissed* 42 NY2d 803, 889; *Public Constructors v State of New York*, 55 AD2d 368, 372; *A. S. Wikstrom, Inc. v State of New York*, 52 AD2d 658, 660). Claimant's vice president, Daniel Elia, testified that its bid had assumed that the bid documents were based on an accurate field inspection of the piers by means of recent hammer soundings. The bid documents, however, do not make this representation but, rather, warn that only major repair areas are indicated and that they are approximations subject to actual field conditions. Claimant's own expert witness, Douglas Pressley, testified that the bid documents' depiction of a small number of large areas indicated that the piers had not been hammer sounded. Since the contract advised bidders to conduct their own inspections and claimant failed to do so, it could not reasonably rely on the bid documents for anything more than an approximation of the repair areas (*see, Depot Constr. Corp. v State of New York, supra*, at 114).

In the alternative, claimant argues that the contract's exculpatory clauses should not be enforced because it did not have enough time to thoroughly inspect the piers. Although this Court has stated that such clauses will not be given effect if an inspection would not have revealed the inaccuracy of the contract's representations (*see, Public Constructors v State of New York, supra*, at 372), this principle is inapplicable here because there is no evidence that a sufficiently thorough inspec-

tion could not have been made before claimant submitted its bid.

Claimant's proof at trial also failed to prove a qualitative change in the nature of the work (*cf., Tufano Contr. Corp. v State of New York*, 25 AD2d 329, 331). Although significantly more areas required repair, the total area repaired and the amount of concrete used was comparable to the original estimates. Thus, claimant established only that the work was more difficult than expected, a circumstance that is plainly insufficient to free it from the unit price contract (*see, Depot Constr. Corp. v State of New York, supra,* at 113-114; *Tufano Contr. Corp. v State of New York, supra,* at 331). Nor are we persuaded that the Court of Claims erred in rejecting claimant's argument that the State's unilateral alteration of a repair procedure amounted to a qualitative change in the work. The record supports the court's finding that the procedure was revised before the contract was executed and, thus, was within claimant's contemplation. For these reasons, we conclude that the Court of Claims properly dismissed the claims for extra work.

We similarly conclude that sufficent evidence supports the finding by the Court of Claims that the additional gallons of bonding compound were not "incorporated into the work" as that phrase is used in the parties' contract. The contract provided that any ambiguities concerning its specifications were to be determined with finality by the State. The project's resident engineer, Carl Niemann, testified that one gallon per 50 square feet was determined to be a satisfactory standard for what would be considered as "incorporated into the work." Niemann also testified that the additional gallons of compound were wasted by claimant due to its short shelf life, improper mixing, adherence problems and application inaccuracies. The only evidence offered to contradict Niemann, who was at the job site on a daily basis and for 60 hours a week, was the testimony of Elia, who admittedly was at the site about twice a month. Since the Court of Claims credited Niemann's testimony in this regard and its assessment of credibility is to be given considerable deference (*see, Carter v State of New York,* 194 AD2d 967), we find ample evidence supporting the court's findings.

Mercure, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.