Matter of American Bridge Co. v Contract Dispute Resolution Bd. of the City of N.Y. (2025 NY Slip Op 01159)

Matter of American Bridge Co. v Contract Dispute Resolution Bd. of the City of N.Y.

2025 NY Slip Op 01159

Decided on February 27, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2025

Before: Moulton, J.P., Gesmer, Mendez, Higgitt, O'Neill Levy, JJ. 

Index No. 150226/23|Appeal No. 3779|Case No. 2023-04675|

[*1]In the Matter of American Bridge Company, Petitioner-Appellant,
v
The Contract Dispute Resolution Board of the City of New York, et al., Respondents-Respondents.

Peckar and Abramson, P.C., New York (Christopher M. Bletsch of counsel), for appellant.
Frank Ng, General Counsel, Office of Administrative Trials and Hearings, New York (Frank Ng of counsel), for Contract Dispute Resolution Board, respondent.
Muriel Goode-Trufant, Corporation Counsel, New York (Amanda Abata of counsel), for City of New York and Ydanis Rodriguez, respondents.

Order and judgment (one paper) Supreme Court, New York Count (John J. Kelley, J.), entered on or about August 21, 2023, denying the petition to annul the determination of respondent Contract Dispute Resolution Board of the City of New York (CDRB), dated September 7, 2022, which denied petitioner's application for an award of additional compensation pursuant to its contract with the New York City Department of Transportation (DOT), and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
In 2018, petitioner American Bridge Company (AB) was the successful bidder on a contract with DOT to repair and replace parts of the upper level of the Ed Koch Queensboro Bridge. The project included the construction of temporary protective shielding which would both provide workers access to the site and protect lower level traffic from the construction. The contract required the contractor to "design, furnish, fabricate, erect, maintain, relocate, and dispose of" the protective shield. The contract further provided that the "erected shielding shall not infringe on any existing minimum clearance shown on the contract plans." However, the contract specified in several places that the dimensions shown on the contract plans were obtained from the original drawings for the bridge. Therefore, the contract explicitly stated that the contractor was expected to take its own field measurements.
In response to a pre-bid question asking DOT to provide existing minimum vertical clearances, DOT wrote: "Review of NYSDOT bridge inventory shows that there is an approximately 14'9" vertical clearance along the curb line of the lower inner roadways. The awarded Contractor is to verify actual dimensions as needed."
After it commenced work in August 2018 petitioner took its first field measurements of the relevant vertical clearance and found that the clearance for the protective shield was over five inches shorter than the estimate provided by DOT. This discrepancy meant that petitioner's temporary protective shield design could only sag four inches to maintain the existing clearance. Petitioner claimed that to reduce the sag, it would need to change its safety shield installation plan, which would lead to additional costs. DOT denied petitioner's request to cover these additional costs, citing the contract's explicit provisions that the "Contractor is responsible to determine the minimum vertical clearance" and that the "means and methods for erecting" the shield were "the Contractor's responsibility."
Petitioner pursued an administrative appeal. The CDRB ultimately upheld DOT's determination, and petitioner brought this Article 78 proceeding. Supreme Court denied the petition, finding that CDRB's determination was rationally based, and was not arbitrary and capricious or affected by an error of law (see CPLR 7803[3]; Matter of L&L Painting Co., Inc. v City of New York, 69 AD3d 517, 517-518 [1st Dept 2010]).
Supreme Court [*2]correctly denied the petition. Although DOT provided "approximate[]" dimensions in response to a pre-bid question, DOT noted that those dimensions were based on a "[r]eview of NYSDOT bridge inventory," a publicly available database, and stated that "[t]he . . . Contractor is to verify actual dimensions as needed." The contract also clarified that the dimensions shown on plans included in the pre-bid documents "may vary from the actual dimensions and elevations as they exist in the field," and, "[t]herefore, the Contractor shall take exact measurements in the field to verify all existing dimensions." The contract further provided that the "Contractor . . . shall have no claim for damages that may result from an error or omission in regard to the . . . dimensions and elevations indicated on the plans."
According to this unambiguous language, the work that petitioner did to redesign the protective shield to fit the actual field dimensions was not extra work. Rather, the contract explicitly imposed on the contractor the responsibility to verify actual dimensions and conform the shield to those dimensions as part of the work required by the contract (see Thomas Crimmins Contr. Co. v City of New York, 138 AD2d 138, 149 [1st Dept 1988], affd 74 NY2d 166 [1989]).
Contrary to petitioner's contention, any inaccuracies in the dimensions provided by DOT did not constitute bad faith misrepresentations, as "[t]he contract documents instructed bidders to make their own inspection of the site and expressly precluded reliance upon" the dimensions in the plans (Conduit & Found. Corp. v State of New York, 52 NY2d 1064, 1066-1067 [1981]). The contract's ample qualifying language precludes petitioner from recovering the cost of the additional work necessary to conform its design to the field dimensions regardless of when petitioner was able to take measurements. The DOT was forthcoming about the need to verify the dimensions, "made no misrepresentations[,] and withheld no information" (All County Paving Corp. v Suffolk County Water Auth., 20 AD3d 438, 438 [2d Dept 2005]).
We have considered petitioner's additional arguments and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2025